IN THE COURT OF APPEALS OF IOWA
No. 23-0238
Filed April 26, 2023

IN THE INTEREST OF P.C.,
Minor Child,

D.C., Mother,
          Appellant.
_____

Appeal from the Iowa District Court for Clinton County,
Kimberly K. Shepherd, District Associate Judge.


A mother appeals the termination of her parental rights to her child.
**AFFIRMED.**


Jennifer Margaret Triner Olsen, Davenport, for appellant mother.

Brenna Bird, Attorney General, and Dion D. Trowers, Assistant Attorney
General for appellee State.

Gina L. Kramer of Kramer Law Office, PLLC, Dubuque, attorney and
guardian ad litem for minor child.


Considered by Bower, C.J., and Badding and Buller, JJ.

**BADDING, Judge.**

A mother who remains under an indefinite mental-health commitment appeals the termination of her parental rights to her child—born in 2021—under Iowa Code section 232.116(d), (e), (h), (i), and (k) (2022).[1] She argues termination is contrary to the child's best interests and she should have been granted more time to work toward reunification.[2]

In January 2022, the mother "was found wandering in the middle of the street nude, and irrational." She was taken to the emergency room for evaluation and later sedated due to her mental state. Police officers went to the family home to look for the children the mother kept mentioning.[3] The home was "barely furnished with clothes and trash throughout," the older child was found in a bedroom wearing only a t-shirt with no pants, and the infant was found under blankets and dirty clothes. The infant was "cold to the touch" and diagnosed with hypothermia. The State obtained an order for temporary removal and filed child-in-need-of-assistance petitions. The mother was admitted to the behavioral health unit of the hospital for several days.

Once she was released from the hospital, the mother began participating in visits. But, in early February, she was arrested for trespass and interference with

---

[1] The parental rights of "any and all unknown fathers" were also terminated. No father appeals.

[2] In her petition on appeal, the mother also cites Iowa Code section 232.116(3)(a), which contains a permissive exception to termination when a relative has legal custody of the child. From the outset, we conclude this exception does not apply, since the child was in the custody of the Iowa Department of Health and Human Services.

[3] The mother has two children—the one involved in this appeal and an older child, born in 2018. The older sibling is not involved in this appeal.

official acts after she was found wandering the hallways of a hotel. A few days later, she was readmitted to the behavioral health unit at the hospital. Then she disappeared for roughly two weeks. When service providers went to her home to check on her, the mother was irrational and verbally abusive. The child was adjudicated to be in need of assistance in late February.

The department did not know where the mother was from mid-February until mid-May, when the caseworker was contacted by a mental-health facility located about two hours away from the child's foster care placement. The caseworker learned that the mother had been placed at the facility in March under a court-ordered commitment that required her to be there for at least eighteen months, which would be followed by some sort of step-down program. While at the facility, the mother was diagnosed with schizoaffective disorder, bipolar type; major depressive disorder; and post-traumatic stress disorder. The facility's records stated the mother had struggled with those illnesses for several years.

By the time of the permanency hearing in October, the mother's treatment plan at the mental-health facility indicated that she would be there until at least July 2023. The plan also noted she "is not permitted alone time," required "24-hour on-site supervision," and could not handle her finances or medications. The department accordingly recommended that a termination petition be filed.

The State filed its termination petition in November, and a hearing on the petition was held in December. An updated treatment plan from the mental-health facility disclosed the mother still could not be alone and required around-the-clock supervision, though she had been moved to a "hab house" with three roommates. On direct examination by her attorney, the mother testified that she thought she

would be discharged in about six months, after which she intended to move in with a cousin before getting an apartment of her own. But on cross-examination, the mother clarified that she would only be eligible for discharge in six months. And even then, she was uncertain whether she would meet the requirements for discharge.

In its termination ruling, the court denied the mother's request for more time because she would not be discharged from the facility for "many months" and then would need to establish stability before the child could be returned to her custody. The court concluded "[t]his child simply cannot continue to wait in foster care, for what is, in reality, an indefinite, undefined period of time, for her mother's mental health to be fully addressed to the point where [the mother] can live on her own and also support a child." The court also acknowledged the "sad reality that, based on her mental health condition, [the mother] may never be in a position to fully care for herself, or for her child." The mother appeals.

Following our de novo review of the record, *see In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022), we first turn to the mother's best-interests challenge. We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). On this point, the mother only notes that, before removal, she cared for the child's older sibling for three years without incident, which "demonstrates that [she] can care for children." Even if we were to assume the mother demonstrated parenting stability in the past, her prior parenting of the older sibling carries little weight on whether termination is in this child's best interests at present.

The child was roughly one month old when she was removed and has lived most of her short life outside the mother's care. She is integrated with her current foster family, where her older sibling also resides. *See id.* § 232.116(2)(b). The foster parents, who are open to adoption, have provided for the child's safety, nurturing and growth, and needs. Due to the mother's unfortunate circumstances, she simply has not been in a position to do the same. Because termination followed by adoption will satisfy this child's safety and need for a permanent home, we conclude termination is in her best interests. *See In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

Alternatively, the mother requests more time to work toward reunification. Additional time is appropriate only if we can conclude "the need for removal . . . will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). The mother argues that because she is "going to be discharged from the facility in six . . . months," she should have been granted an extension "so she could be out and prove she can care for the child when she is not in an involuntary commitment." But, as noted, the mother testified that there is no guarantee she will be discharged in six months, only that she would be *eligible* for discharge then. *Cf. In re L.S.*, No. 21-2000, 2022 WL 2826024, at *1 (Iowa Ct. App. July 20, 2022) ("We don't even know if [the parent] will be out of jail or prison by then. So we have no basis to conclude an extension of time is warranted."). Even after she is discharged, the mother would still need more time to show stability with her mental health in the community before the child could be returned to her custody. Given the time that has already passed in this child's young life, we agree with the juvenile court that more time is not appropriate. *See In re*

*C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency.").

For these reasons, we affirm the termination of the mother's parental rights.

**AFFIRMED.**